IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Gerard Darvell Williams, Sr.,** )<br>    **Plaintiff,** )<br>) | |
| v. ) | 1:19cv1605 (LMB/JFA) |
| ) | |
| **James Nesterick,** )<br>    **Defendant.** ) | |

MEMORANDUM OPINION

Plaintiff Gerard Darvell Williams, Sr., ("Williams" or "plaintiff") initiated this civil action under 42 U.S.C. § 1983, alleging that defendant James Nesterick ("Nesterick" or "defendant") infringed his rights by (1) removing him from a therapeutic program at the Prince William County Adult Detention Center ("PWCADC") and (2) revealing plaintiff's criminal record to other participants in the program. [See Dkt. Nos. 11-12 ("Am. Compl.")]. Before the Court is Nesterick's Rule 12(b)(6) motion to dismiss the complaint [Dkt. Nos. 26-27], to which plaintiff has filed an opposition [Dkt. Nos. 47-48], and defendant has replied. Accordingly, this matter is fully briefed. For the reasons that follow, the motion to dismiss will be granted, and the complaint dismissed with prejudice.

I. Background

The complaint is handwritten and drafted in a stream-of-consciousness style that defies simple distillation. The Court's best effort to organize and present its allegations—which are assumed true for the purpose of ruling on the motion to dismiss—follows.

In June 2018, plaintiff was incarcerated at PWCADC and participating in the "recovery dorm," a therapeutic program at the facility. [See Dkt. No. 11 ("Am. Compl.")]. That month, plaintiff became eligible to enter "the next phase, which is the drug dorm," through which

inmates may earn good conduct time credits to reduce the length of their sentences. [Id.]. Defendant Nesterick approached plaintiff and informed him that because a current participant in the program "had an issue with" plaintiff, he would have to wait before being admitted to the drug dorm. [Id.]. On November 26, 2018, plaintiff was finally admitted to the program; however, four days later, at Nesterick's urging, plaintiff was removed from the drug dorm without "any written notice of disciplinary action, the right to call witnesses at a hearing, assistance in preparing for the hearing," or any written statement indicating the reasons for his expulsion. [Id.]. Plaintiff filed a series of grievances and complaints seeking reentry to the drug dorm but was not offered readmittance. [Id.].

In April 2019, plaintiff learned from other inmates that, the day after his expulsion from the drug dorm, Nesterick "wrote down [plaintiff's] whole criminal history in front of everyone while making a public spectacle of [plaintiff] and malign[ing] [plaintiff's] character to [his] peers." [Id.]. Plaintiff filed several complaints and grievances to state and local regulators regarding Nesterick's actions. [Id.]. In response to one of those complaints, the Prince William County Local Human Rights Committee found that Nesterick had violated portions of the Virginia Administrative Code by breaching plaintiff's confidentiality. [Id.].

The complaint alleges that since Nesterick revealed plaintiff's criminal history, plaintiff has been "an outcast." [Id.]. He remains uncomfortable and scared, claiming that his previous criminal convictions could enrage other inmates, threatening his safety. [Id.]. He seeks $500,000 in damages. [Id.].

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A plaintiff must therefore allege facts in support of each element of each claim he or she raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Iqbal, 566 U.S. at 678.

### III. Analysis

In his complaint and response to defendant's motion to dismiss, plaintiff raises a host of potential grounds for relief. He first suggests that both his expulsion from the drug dorm program and Nesterick's decision to make public his criminal history violated his rights under the Fourteenth Amendment's Due Process Clause. Plaintiff additionally argues that the publication of his criminal history violated his right to privacy, placed him in danger of assault by other inmates, and constituted intentional infliction of emotional distress, a state law claim. None of these allegations make out viable claims.

*A.* *Due Process*

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, § 1. Consequently, "[t]o state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest

without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Prisoners possess a liberty interest only in (1) state-created entitlements to early release from incarceration, see Bd. of Pardons v. Allen, 482 U.S. 369, 381 (1987), and (2) being free from conditions that "impose[] atypical and significant hardship ... in relation to the ordinary incidents of prison life," see Sandin v. Connor, 515 U.S. 472, 484 (1995). Where a plaintiff fails to identify a protectable liberty or property interest that is placed in jeopardy by a defendant's actions, he fails to establish that he is owed any level of procedural protection. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty [or property] interest").

1. Drug Dorm Expulsion

Plaintiff first argues that he held a liberty interest in participating in the drug dorm program, through which he claims he may have been eligible to earn good conduct time to credit against his sentence. His summary removal from that program, he reasons, thus violated the Due Process Clause's requirements.

Plaintiff is incorrect; it is well-settled that prisoners have no constitutionally recognized right to participate in educational or rehabilitation programs such as PWCADC's drug dorm program. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995) ("Prisoner classification and eligibility for rehabilitation programs ... are not directly subject to 'due process' protections.") (citing Moody).

Nor has the state in this case created an enforceable interest in therapeutic program participation. In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court explained:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its

4

> own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84 (citations omitted). Plaintiff's removal from the drug dorm program does not rise to this standard. See McManus v. Blalock, No. ELH-14-3480, 2015 WL 9183394, at *11 (D. Md. Dec. 17, 2015) ("[A]n inmate's termination from a substance abuse program ... is neither atypical nor amounts to a significant hardship in relation to the ordinary incidents of prison life, and thus, no constitutionally protected interest was abridged.").

Had plaintiff already earned good time credits through the drug dorm program that were revoked upon his removal, plaintiff would have been entitled to some degree of procedural protection. See Wolff v. McDonnell, 418 U.S. 369, 381 (1987) (recognizing state-created liberty interest in good conduct credits). Here, though, the complaint simply makes no such claim. Instead, plaintiff appears to grieve only his inability to prospectively earn such credits. This is insufficient to support a due process claim. See Meachum v. Fano, 427 U.S. 215, 225-26 (1976); Holmes v. Cooper, 872 F. Supp. 2d 298, 302 (W.D. Va. 1995) ("The opportunity to earn good time credits is not a constitutionally established liberty interest."). Cf. Gaskins v. Johnson, 443 F. Supp. 2d 800, (E.D. Va. 2006) (Ellis, J.) (granting motion to dismiss as to due process claim where plaintiff's drug infraction resulted in new prison classification, thereby merely "reducing the good-time credits he might earn *in the future*") (emphasis in original).

Having failed to establish that his removal from PWCADC's drug dorm program implicated any identifiable liberty interest, plaintiff has failed to demonstrate that he was entitled to any due process protections before his removal from the program. This claim will therefore be dismissed.

2.  Publication of Criminal Record

Plaintiff next asserts that defendant's publication of his criminal record to other drug dorm participants violated his rights under the Due Process Clause, in that it deprived him "of a protected liberty or property interest." See Dkt. No. 47, p. 8. Plaintiff has not cited to any relevant authority identifying the existence of such an interest, nor is any readily identifiable. Indeed, as defendant argues, plaintiff's criminal history is a matter of public record available to any individual interested enough to look. Inconsiderate as defendant may have been in disseminating plaintiff's criminal record, that act does not constitute an infringement on any right or interest possessed by plaintiff. Cf. Rice v. Wayne Cty. Dept. of Soc. Servs., No. 5:09-cv-408-FL, 2010 WL 2679991, at *1 (E.D.N.C. July 1, 2010) ("Dissemination of public records [does] not ... give rise to a plausible claim that any constitutional rights of plaintiff were violated.").

B.  ***Privacy and Confidentiality***

Plaintiff additionally argues that defendant violated "federal or state confidentiality laws and regulations" in disclosing his criminal record. See Dkt. No. 47, p. 8. Plaintiff explicitly invokes 42 C.F.R. Part 2 in support of this argument. This claim is better construed under 42 U.S.C. § 290dd-2, the statute under which the regulation plaintiff cites was promulgated. See Delano v. Rendle, No. 9:13-cv-0070, 2015 WL 1506079, at *4 n.8 (N.D.N.Y. Mar. 31, 2015). This statute prohibits disclosure of "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse disorder education, prevention, training, treatment, rehabilitation, or research." 42 U.S.C. § 290dd–2. Although this statute does not appear relevant, if it were, plaintiff would still not have a valid claim because the Fourth Circuit has held that the statute does not create any individual rights enforceable under § 1983. See Doe

6

v. Broderick, 225 F.3d 440, 447-48 (4th Cir. 2000). Accordingly, the regulation plaintiff invokes offers him no relief.

Two other potential legal bases for plaintiff's privacy argument warrant brief discussion. First is the United States Constitution itself. The Constitution affords individuals a limited right to privacy and an "interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). "The right to privacy, however, is not absolute," see Walls v. City of Petersburg, 895 F.2d 188, 192 (4th Cir. 1990), and courts of appeals are agreed on the proposition that divulgence of an individual's criminal record does not violate that right. See, e.g., Clive v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996) ("[T]here is no constitutional right to privacy in one's criminal record."); Holman v. Central Arkansas Broadcasting Co., 610 F.2d 542, 544 (8th Cir. 1979) ("[N]o right to privacy is invaded when state officials allow or facilitate publication of an official act such as an arrest."); Baker v. Howard, 419 F.2d 376, 377 (9th Cir. 1969) (holding that constitutional right to privacy is not implicated even when police officers circulate false rumors that person has committed a crime). Accordingly, there is no constitutional basis for plaintiff's claim.

Nor does the Privacy Act of 1974, which plaintiff invoked in his initial complaint, offer any relief. "The Privacy Act contains only two substantive sections, Section 3, which applies only to federal agencies, and Section 7, which applies to federal, state, and local agencies." White v. Cain, No. 2:10cv1182, 2011 WL 1087489, at *6 (S.D. W. Va. Mar. 21, 2011) (citing Schweir v. Cox, 340 F.3d 1284, 1287–88 (11th Cir. 2003)). Because the complaint names a state official as the sole defendant in this matter, neither Section 3 nor Section 7 of the Privacy Act aid plaintiff in his cause. See Sturkey v. Ozmint, No. 8:07-1502, 2008 WL 373610, at *1 (D.S.C. Feb. 7, 2008) ("The Privacy Act of 1974, 5 U.S.C. § 552a, limits the kind of information that can

7

be collected or disclosed by federal agencies and furnishes a private cause of action against a federal agency for violating the Act's provisions. The Act does not apply to state agencies."); Fares v. I.N.S., 29 F. Supp. 2d 259, 262 (W.D.N.C. 1998), aff'd 11 F. App'x 137 (4th Cir. 2001) ("Although the Privacy Act provides remedies against an offending agency, it provides no remedies against individual officials.")

For these reasons, plaintiff has failed to state a claim that defendant violated his right to privacy by publicizing his criminal record.

C.  *Failure to Protect / Risk to Plaintiff's Safety*

Plaintiff suggests in passing that defendant's decision to reveal his criminal history "had some real serious [sic] consequences, including placing [plaintiff's] safety at risk." See Dkt. No. 47. A prison official may be held liable if his or her actions cultivate an unsafe environment for an inmate. See, e.g., Miller v. Leathers, 913 F.2d 1085, 1088 n.1 (4th Cir. 1990) (plaintiff stated Eighth Amendment claim by alleging prison official labeled him as a "snitch" to other prisoners). To state such a claim, a complaint must allege (1) that the prison official's actions either led to a plaintiff suffering injury or facing "a substantial risk of serious harm," and (2) that the official acted with deliberate indifference to that risk. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

With regard to this claim, the complaint alleges only that, in "October 2019, [plaintiff] received anonymous and threatening communications that directly corresponded to [his] personal information having been shared and made public by Jim Nestrick." [See Am. Compl.]. Plaintiff additionally claims to have remnants of a bullet lodged in his face and that any physical altercation could therefore lead to significant injury. [Id.].

8

The complaint's single allegation regarding the threat plaintiff faced, totally unsupported by additional details such as how plaintiff received the threat, the nature of the threat, or how plaintiff knew the threat arose from the dissemination of his criminal history, is much too vague to warrant relief under a "failure to protect" theory.[1] Therefore this claim will be dismissed.

### D. *Equal Protection*

Plaintiff also complains that being forced to wait for several months before participating in the drug dorm "deprived [him] of [his] right to have the same equal opportunities as others." [See Dkt. No. 11]. Construed liberally, this could be viewed as a claim that plaintiff was denied equal protection of the law. The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors and ensures that all similarly situated individuals will be treated in the same way. U.S. Const. amend. XIV. To succeed on an equal protection claim, a prisoner-plaintiff must show that (1) he was treated differently from others (2) who were similarly situated and (3) that this unequal treatment was the result of intentional or purposeful discrimination. See Plyer v. Doe, 457 U.S. 202 (1982); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). The complaint's allegations in no way demonstrate that plaintiff was similarly situated to other inmates who were able to join the drug dorm without delay or that the decision to make plaintiff wait was based on "intentional or purposeful discrimination." To the extent plaintiff sought to raise an Equal Protection claim, the claim will also be dismissed.

---

[1] Plaintiff filed dozens of pages of exhibits with his complaint. [See Dkt. Nos. 11-12]. To the extent he believes these exhibits illustrate the nature of the threat more fully, that does not salvage the complaint itself. It is the plaintiff's burden to allege facts that support his claims; he cannot expect the Court or the defendant to parse through his filings in search of a viable claim. See, e.g., Holsey v. Collins, 90 F.R.D. 122 (D. Md. 1981) (observing that a complaint such as plaintiff's "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be," and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors").

9

### E.   *Intentional Infliction of Emotional Distress*

Finally, plaintiff claims that defendant's decision to reveal his criminal history has made him uncomfortable and scared, because "if some one hits [him] the bullet in [his] face could travel and kill [him]." [See Dkt. No. 11]. On this basis, he claims defendant is liable for intentional infliction of emotional distress. [Id.].

"The tort of intentional infliction of emotional distress is 'not favored' in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury." Supervalu, Inc. v. Johnson, 276 Va. 356, 370 (2008) (quoting Almy v. Grisham, 273 Va. 68, 77 (2007)). A plaintiff alleging intentional infliction of emotional distress "must prove his case by clear and convincing evidence." Id. In Virginia, to state such a claim, a complaint must allege that: (1) the defendant acted intentionally or recklessly; (2) the behavior was outrageous or intolerable; (3) a causal connection exists between the behavior and the emotional distress; and (4) the resulting emotional distress was severe. Harris v. Kreutzer, 271 Va. 188, 203 (2006); Supervalu, Inc., 276 Va. at 370.

Plaintiff's complaint is deficient with respect to the fourth factor. Under Virginia law, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Russo v. White, 241 Va. 23, 27 (1991) (citation omitted). The complaint here alleges only that defendant's actions made him "uncomfortable" and "scared" and that it has been "very stressful for … [his] family." [See Dkt. No. 11]. Plaintiff's allegations fall far short of those raised in Russo, in which the Supreme Court of Virginia found plaintiff's allegations that she was nervous, could not sleep, experienced stress and "its physical symptoms," withdrew from activities, and was unable to

10

concentrate at work not "so severe that no reasonable person could be expected to endure it" and dismissed her claim as inadequately pleaded. See Russo, 241 Va. at 28.

## IV. Conclusion

For all the reasons stated above, defendant's motion to dismiss will be granted through an order that will accompany this memorandum opinion.

Entered this 5th day of February 2021.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

11